**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

----------------------------------------------------------------X

ALI FIDAN and ECE KARAGOZ
on behalf of themselves, FLSA Collective Plaintiffs
and the Class,

Plaintiffs,

-against-

ISTANBUL REGO PARK INC.
d/b/a BLACK SEA FISH AND GRILL,
ALI GULU, YASIN CABUK, YURI DOE,
and YUJIN DOE,

Defendants.

----------------------------------------------------------------X

Case No. 22-CV-02252
(ENV) (SJB)

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS

AKIN LAW GROUP PLLC
Robert Salaman
45 Broadway, Suite 1420
New York, New York 10006
(212) 825-1400
rob@akinlaws.com
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................iii

PRELIMINARY STATEMENT....................................................................1

STATEMENT OF FACTS ....................................................................2

LEGAL STANDARD ....................................................................5

ARGUMENT....................................................................6

I. Plaintiffs Sufficiently Pled Their FLSA and NYLL Minimum Wage Claims ..................6

II. Plaintiffs' Sufficiently Pled Their FLSA and NYLL Overtime Claims..........................7

III. Plaintiffs' Sufficiently Alleged Their FLSA and NYLL Tip Misappropriation Claims....................................................................10

IV. The Individual Defendants Employed the Plaintiffs and Are Personally Liable for the Wage Violations....................................................11

V. Plaintiffs Should Be Permitted Leave to Amend the Complaint............................12

CONCLUSION....................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Adia v. Grandeur Management, Inc.*
933 F.3d 89 (2d Cir. 2019) ……………………….…………………………...……….5

*Alfonso v. Mougis Logistics Corp.*,
2021 U.S. Dist. LEXIS 233344 (S.D.N.Y. Dec. 6, 2021) ……………….……………………6, 7

*Anoop M. Tolani v. Carl C. Burnett Funeral Home*, Inc.,
2022 U.S. Dist. LEXIS 142024 (E.D.N.Y. Aug. 9, 2022)…………….……………….…10

*Ashcroft v. Iqbal*
556 U.S. 662, 678 (2009) ……………………….………………………………….…….6

*Baldia v. RN Express Staffing Registry LLC*
2022 U.S. Dist. LEXIS 180736, (S.D.N.Y. Oct. 3, 2022) …………...……...…………6, 7

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544, 570 (2007) ……………………….……………………….………………6

*Bonnette v. Cal. Health and Welfare Agency*
704 F.2d 1465, 1470 (9th Cir. 1983) …………………………….……….………12, 13

*Carter v. Duchess Cmty. Coll.*
735 F. 2d 8, 12 (2d Cir. 1984) …..……………………………………………...12, 13

*Cruz v. AAA Carting & Rubbish Removal, Inc.*
116 F. Supp. 3d 232, 242 (S.D.N.Y.2015) ……………………….…………………6, 7

*DeJesus v. HF Mgmt. Servs., LLC*
725 F.3d at 89 (2d. Cir. 2013)……………….………………………….….…………9

*Di Simone v. CN Plumbing, Inc.*
2014 WL 1281728, at *4 (E.D.N.Y. Mar. 31, 2014) ………………….………………....9

*Gunawan v. Sake Sushi Rest.*
897 F. Supp. 2d at 89 (E.D.N.Y. 2012)……………... ………………………………….11

*Hart v. Crab Addison, Inc.*
2014 U.S. Dist. LEXIS 85916 (W.D.N.Y. June 24, 2014) ………….……………….......6

*Kuck v. Planet Home Lending, LLC*
354 F. Supp. 3d 162, 168-71 (E.D.N.Y. 2018) ……………….……………….……...9, 10

*Leon v. Port Wash. Union Free Sch. Dist.*
49 F. Supp.3d 353, 357 (E.D.N.Y. 2014) ……………………….………………….……….9

*Lopez-Serrano v. Rockmore*
132 F. Supp. 3d 390, 402 (E.D.N.Y. 2015) …………………….………….…….….……6

*Lundy v. Catholic Health Sys. of Long Island, Inc.*
711 F.3d 106, 115 (2d Cir. 2013) ……………………….………………….…………..6

*Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Gargo Sec., LLC*
at 797 F.3d 160, 190 (2d Cir. 2015) ….………………………………………...12, 13

*Patterson v. Morgan Stanley*
2017 Wl 11569235, at *2 (S.D.N.Y. 2017) …………………………………12, 13

*Swiatlowski v. Citibank*
446 Fed. Appx. 360, 360-61 (2d Cir. 2011) ……………………….……………….………..5

*United States v. Klinghoffer Bros. Realty Corp*
285 F.2d 487, 490 (2d Cir. 1960) ………………………………………….………….……..6

*York v. Association of the Bar of the City of New York*
286 F.3d 122, 125 (2d Cir. 2002) ……………………….…………………….………..6

**Statutes**

Fair Labor Standards Act ("FLSA") …………………………………………………… *passim*

Fed. R. Civ. P. 8(a)(2) ……………………………………………………………………5

Fed. R. Civ. P. 12(b)(6) …………………………………………………………………..5

Fed. R. Civ. P. 15(a) ……………………………………………………………………….12

N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-2.14, 146-2.15, 146-2.16 ……………………….10

New York Labor Law ("NYLL") ………………………………………………… *passim*

Plaintiffs Ali Fidan ("Fidan") and Ece Karagoz ("Karagoz") (collectively, "Plaintiffs") hereby oppose Defendants' Istanbul Rego Park Inc. d/b/a Black Sea Fish and Grill ("Restaurant"), Ali Gulu ("Gulu"), Yasin Cabuk ("Cabuk"), Yuri Doe ("Yuri") and Yujin Doe ("Yujin") (collectively, "Defendants") Motion to Dismiss and respectfully submit this Memorandum of Law in Opposition.

## PRELIMINARY STATEMENT

Defendants Motion to Dismiss contends that Plaintiffs have failed to meet the long known and well-established pleading standard to state a claim pursuant to both the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Defendants' arguments are baseless and without merit. First, Plaintiffs' allegations in the Complaint (which must be taken as true for purposes of this motion), provide more than sufficient detail about the length and frequency of Plaintiffs' hours and pay to state plausible claims under the FLSA and NYLL. Plaintiffs specifically alleged that "**For the duration of their employment**", Plaintiffs worked more than 40 hours per week and more than ten hours per day, and yet were not paid overtime or spread of hours pay.

Second, the individual Defendants named by the Defendants (Richard Mandarino and John Mandarino) in Point II of their Motion are not the named Defendants in this Complaint. In any event, Plaintiffs sufficiently alleged that the individual defendants in this matter "possessed and/or exercised the power and authority to hire and fire… and determine terms and conditions of Plaintiffs' employment." As such, the individual defendants employed the Plaintiffs. Third, if necessary, Plaintiff respectfully requests permission to amend the complaint. In denying Defendants' motion for a stay, Judge Bulsara wrote that, "The motion to dismiss, in the Court's

view, will not result in a with-prejudice dismissal of the claims in the Complaint." (ECF Doc. No. 9). Accordingly, Defendants' motion must be DENIED.

## STATEMENT OF FACTS

Plaintiffs Fidan and Karagoz were employed as non-exempt employees by Defendants. ⁋68, 110.[1] They bring this action on behalf of themselves and other similarly situated employees (collectively "Plaintiffs") alleging that Defendants willfully failed to compensate their employees minimum wage, overtime premium, failure to pay spread-of-hours, civil damages for the failure to provide a wage notice and proper wage statements and retaliation. ⁋3-4. Plaintiffs also allege that Defendants failed their duty to maintain accurate records of their time worked.

From approximately March 2020 to July 2020, Fidan worked for Black Sea Fish and Grill restaurant located at 3100 Ocean Pkwy, Brooklyn, NY 11235. ⁋69. Fidan worked as a dish washer. ⁋70. Fidan performed other tasks for the Defendants such as advertising and repairing the premises. ⁋71. Fidan usually worked from Friday to Wednesday, having only Thursday off. ⁋72. Fidan was not given a lunch break and was not given any paid sick days. ⁋73.

At the Brooklyn location, Fidan worked six (6) days per week, from 11:30 a.m. to 1:00 a.m. or 2:00 a.m. (depending on the time the last customer left the restaurant). ⁋75. Fidan worked approximately 65 to 75 hours per week. ⁋76. Fidan was paid $600 per week in cash. ⁋78.

From approximately July 2020 to January 2022, the Defendants transferred Fidan to another restaurant with the same name, Black Sea Fish and Grill, located at 95-36 Queens Boulevard Rego Park, NY 11374. ⁋80. Fidan had the same position, as dish washer and the same schedule set by the Defendants. ⁋81. The Defendants increased Fidan's pay rate to $650 per

[1] ⁋__ references the Paragraph in Plaintiffs' Complaint, attached as Exhibit A.

week. ⁋82. In approximately May 2021, Fidan received a pay raise to $700 per week. Fidan's job position also changed from dish washer to salad preparer. ⁋84.

Fidan worked the same schedule, from Friday to Wednesday, having only Thursday off. Fidan worked six (6) days per week, from 11:30 a.m. to 11:00 p.m. or 2:00 a.m. (depending on the time the last customer left the restaurant). ⁋85-88. Fidan worked approximately 65 to 75 hours per week. ⁋89. Fidan was paid in cash and check while working at Defendants' restaurant located in Queens. ⁋90.

The Defendants failed to pay Fidan minimum wage, overtime or spread of hours pay. The Defendants also failed to provide Fidan with a wage notice upon his hire and failed to provide Fidan with wage statements / pay stubs, in violation of the NYLL. As such, Fidan complained about the Defendants' wage violations. ⁋104-109.

In retaliation for Fidan's complaints, the Defendants retaliated against Fidan by reducing his hours. Specifically, in January 2022, the Defendants advised Fidan to take two days off work and then to come back. ⁋96. When Fidan came back to work two days later, the Defendants informed Fidan that they could not employ him any longer, and told him to report back in two months. ⁋97. Gulu told Fidan, you can find a job elsewhere. ⁋98. When Fidan came back to work two months later, the Defendants still refused to employ Fidan. Fidan was effectively terminated in January 2022 in retaliation for his complaints about improper pay practices. ⁋99-100.

Karagoz was employed by the Defendants as a non-exempt employee from approximately September 2018 to September 2021. ⁋110. From approximately September 2018 to September 2021, Karagoz worked for Defendant Black Sea Fish and Grill located at 95-36 Queens Boulevard Rego Park, NY 11374 as a waitress. ⁋111. Karagoz's duties and responsibilities included, but were not limited to: taking food and drink orders, serving food,

preparing and serving alcoholic drinks, cleaning the bar area, restocking bar supplies from the basement, processing customer payment, and bussing and cleaning tables. ⁋112.

Karagoz usually worked from Wednesday to Sunday, having Monday and Tuesday off. ⁋114 Karagoz was not given a lunch break and was not given any paid sick days. ⁋115. Karagoz worked from 11:00 a.m. to anywhere from 11:00 p.m. to 2:00 a.m. (depending on the time the last customer left the restaurant). ⁋116. Karagoz worked at minimum five (5) days per week, and occasionally six days per week. ⁋117. Karagoz worked approximately 65 to 70 hours per week. ⁋118. Karagoz was paid in cash. ⁋119 From the commencement of her employment until approximately May 2020, Karagoz was paid $12.00 per hour, without tips. Karagoz's tips were taken by the owners. ⁋120.

From May 2020 to July 2020, Karagoz only earned $100 per day and was only allowed to keep a small percentage of her tips. ⁋134. From May 2020 to July 2020, Karagoz worked from 11:00 a.m. to 11:00 p.m. or 2:00 a.m. ⁋133. (depending on the time the last customer left the restaurant). Karagoz worked five (5) days per week, having Monday and Tuesday off. ⁋137. The Defendants told Karagoz that she could only get paid hourly pay or get paid by tips but not both. ⁋138. Karagoz was paid solely in tips. ⁋139.The Defendants failed to pay Karagoz minimum wage, overtime or spread of hours pay. ⁋150 The Defendants also failed to provide Karagoz with a wage notice upon her hire and failed to provide Karagoz with wage statements / pay stubs, in violation of the NYLL. ⁋150-155.

On or about Sunday, September 12, 2021, Karagoz complained about her unpaid wages, including not receiving overtime. ⁋143. The Defendants retaliated against Karagoz for complaining by telling her to take 15 days off and to not arrive for her scheduled shifts. ⁋144. Defendants also retaliated against Karagoz by accusing her of stealing from the register, which

was untrue. ⁋144. Defendants then told Karagoz that she was only allowed to work two or three days a week, with the option of working in the Brooklyn location. ⁋145. In response, Plaintiff requested her prior full-time work schedule. Defendants denied this request and terminated Plaintiff Karagoz. ⁋146-147. Plaintiff Karagoz was terminated effective September 12, 2021. ⁋148. Defendants terminated Plaintiff Karagoz employment in retaliation for her complaints of and opposition to Defendants' unlawful pay scheme. ⁋149.

Accordingly, Plaintiffs clearly and specifically identify: (1) the workweeks in which they worked in excess of 40 hours; namely, **every week**; (2) the workweeks in which Defendants failed to pay them overtime compensation; namely, **every week**; and (3) the number of hours they worked without overtime pay; namely 20-25 overtime hours **every week**.

## LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Defendants move to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6). When considering such a motion, **the court must accept as true all well-pleaded factual allegations and must draw all inferences in plaintiff's favor**. *Swiatlowski v. Citibank*, 446 Fed. Appx. 360, 360-61 (2d Cir. 2011) (emphasis added).

As held in *Adia v. Grandeur Management, Inc.*, 933 F.3d 89 (2d Cir. 2019), to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is

"a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id., 679. Thus, on a motion to dismiss for failure to state a claim, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *York v. Association of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002).

**ARGUMENT**

**I. Plaintiffs Sufficiently Pled Their FLSA and NYLL Minimum Wage Claims**

Under the FLSA and NYLL, "an employee cannot state a claim for minimum wage violations unless their average hourly wage falls below the minimum wage.'" *Lopez-Serrano v. Rockmore*, 132 F. Supp. 3d 390, 402 (E.D.N.Y. 2015) (quoting *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013)). "Under what has become known as the Klinghoffer rule, no minimum wage violation occurs so long as the total wage paid to an employee in any given workweek divided by the total hours worked in the workweek equals or exceeds the applicable minimum wage." *Hart v. Crab Addison, Inc.*, No. 13-CV-6458 (CJS), 2014 U.S. Dist. LEXIS 85916, 2014 WL 2865899, at *11 (W.D.N.Y. June 24, 2014) (citing *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960)). "[A]s long as a Plaintiff's average wage exceeds the federal minimum wage, it does not matter how that average is calculated." *Alfonso v. Mougis Logistics Corp.*, No. 21-CV-5302 (LJL), 2021 U.S. Dist. LEXIS 233344, 2021 WL 5771769, at *4 (S.D.N.Y. Dec. 6, 2021) (citing *Cruz v. AAA Carting & Rubbish Removal, Inc.*, 116 F. Supp. 3d 232, 242 (S.D.N.Y.2015)). *Baldia v. RN Express Staffing Registry LLC*, 2022 U.S. Dist. LEXIS 180736, at *32-33 (S.D.N.Y. Oct. 3, 2022).

Defendants argue in their moving papers that Karagoz's FLSA minimum wage (not NYLL minimum wage claim) should be dismissed because she alleged that she was paid $12.00 per hour. Notably, Defendants' do not mention anything about Fidan's minimum wage claims and therefore have abandoned their right to dismiss his claims. As to Karagoz, while she was paid $12.00 per hour during a portion of employment, Karagoz was also paid just $100.00 per day (less than the federal minimum wage) from May 2020 to July 2020. ¶134. The Defendants told Karagoz that she could only get paid hourly pay or get paid by tips but not both. ¶138. Additionally, in July 2020, the Defendants told Karagoz she could only get paid hourly or by tips but not tips. Thereafter, Karagoz was paid solely in tips. Karagoz was not paid any hourly pay whatsoever. ¶138, 139. As such, Defendants' motion to dismiss Plaintiff's minimum wage claim must be DENIED.

## II. <u>Plaintiffs' Sufficiently Pled Their FLSA and NYLL Overtime Claims</u>

Defendants next argue that Plaintiffs' overtime claims should be dismissed because Plaintiffs failed to identify a single week in which they worked over 40 hours. This is simply not true. Plaintiffs specifically pled facts to establish unpaid their overtime claims under both the FLSA and NYLL. The Complaint provides factual context going far beyond what is required to support a reasonable inference that Plaintiffs worked more than 40 hours in given workweeks. Plaintiffs clearly and unequivocally allege that they worked 65-70 hours during each work week of their respective employment tenures. ¶74-79. In addition, Plaintiffs specifically state that Defendants never paid them for any overtime hours worked. ¶105, 151.[2]

[2] Plaintiffs also pled spread-of-hours claims under the NYLL and retaliation claims under the FLSA and NYLL. Defendants' do not address those claims in their moving papers and therefore have waived any arguments regarding dismissal of those claims.

Plaintiffs specifically allege that they were not paid overtime for **each and every week for the duration of their employment**. ¶105-106, 151-152. Plaintiffs set forth their specific schedule and hours worked on a weekly basis. For instance, Plaintiff Fidan asserted, "At the Brooklyn location, Plaintiff Fidan worked six (6) days per week. …At the Brooklyn location, Plaintiff Fidan worked from 11:30 a.m. to 1:00 a.m. or 2:00 a.m. (depending on the time the last customer left the restaurant) …. That at all times herein relevant, Plaintiff Fidan worked approximately 65 to 75 hours per week." ¶74-76. Plaintiff Fidan is owed unpaid overtime and unpaid minimum wage from his work at Black Sea Fish and Grill located at 3100 Ocean Pkwy, Brooklyn, NY 11235. ¶76 "From approximately July 2020 to January 2022, Defendant transferred Plaintiff Fidan to another restaurant with the same name, Black Sea Fish and Grill, located at 95-36 Queens Boulevard Rego Park, NY 11374…. That at all times herein relevant, following this transfer, Plaintiff Fidan had the same position, as dish washer and the same schedule set by the Defendants." ¶80-81.

Similar to Plaintiff Fidan, Plaintiff Karagoz also specifically alleged her schedule and hours worked. Specifically, Plaintiff Karagoz alleged, "That at all times herein relevant, Plaintiff Karagoz worked from 11:00 a.m. to anywhere from 11:00 p.m. to 2:00 a.m. (depending on the time the last customer left the restaurant). That at all times herein relevant, Plaintiff Karagoz worked at minimum five (5) days per week, and occasionally six days per week. That at all times herein relevant, Plaintiff Karagoz worked approximately 65 to 70 hours per week. ¶116 – 118.

With their detailed allegations, Plaintiffs provide the requisite factual context the Second Circuit held is necessary to guide their overtime claims from conceivable to plausible. *DeJesus*, 725 F.3d at 89. Here, Plaintiffs' allegations go far beyond what the Court in *Lundy*, *Nakahata*

and *DeJesus* found insufficient. In those cases, Plaintiffs merely alleged that they "occasionally," "typically," or "regularly" worked more than 40 hours in some weeks without providing the frequency or context in which they were not paid overtime, or alleged unpaid hours which did not add up to more than 40 hours in any given workweek.

In contrast, Plaintiffs' allegations here, taken as true, provide sufficient detail about the length and frequency of their unpaid work to state an FLSA and a NYLL overtime claim. *See, e.g., Leon v. Port Wash. Union Free Sch. Dist.*, 49 F. Supp.3d 353, 357 (E.D.N.Y. 2014) (finding plaintiff's allegations that she "regularly worked forty hours per week[,]" along with "estimates" that she worked 1.5 to 2 hours per week, stated a claim for FLSA overtime violations); *Di Simone v. CN Plumbing, Inc., 2014 WL 1281728*, at *4 (E.D.N.Y. Mar. 31, 2014) (denying motion to dismiss FLSA and NYLL overtime claims where plaintiff had alleged that he "typically worked over 40 hours per week" and was not appropriately compensated).

The Court's reasoning in *Kuck v. Planet Home Lending, LLC*, 354 F. Supp. 3d 162, 168-71 (E.D.N.Y. 2018) is particularly instructive to this case. The *Kuck* court held that the plaintiffs stated an FLSA claim by setting "forth a specific range of time that the Plaintiffs worked above the 40-hour threshold every week" as opposed to "merely claiming that they 'occasionally,' 'typically,' or regularly' worked more than 40 hours in some weeks."). There, the Court discussed a trio of cases ("the *Lundy-Nakahata-Dejesus* triumvirate") which the Second Circuit decided in 2013 that set out the degree of specificity an FLSA plaintiff is required to plead to state a claim for unpaid overtime. The Court found that plaintiffs' allegations that they worked 50-55 hours during every single week of their employment, "clearly satisfy the Second Circuit's edict that a complaint contain specificity as to uncompensated hours worked during a particular

week." Id. at 168 (collecting cases). *Anoop M. Tolani v. Carl C. Burnett Funeral Home*, Inc., No. 20-CV-2169 (JS)(JMW), 2022 U.S. Dist. LEXIS 142024, at *38-39 (E.D.N.Y. Aug. 9, 2022).

Here, Plaintiffs alleged that they worked at least 65 hours per week for the duration of their employment (each and every week) and were not paid overtime for hours worked in excess of 40 each week. As such, the Plaintiffs have more than sufficiently met the plausibility standard required to state a claim for their overtime causes of action.[3] Accordingly, Defendants' motion to dismiss the FLSA and NYLL overtime claims must be DENIED.

### III. <u>Plaintiffs' Sufficiently Alleged Their FLSA and NYLL Tip Misappropriation Claims</u>

Next, Defendants argue that Plaintiffs' tip misappropriation claims must be dismissed for failure to state a claim. Once again, Defendants are mistaken. The misappropriation of tips is prohibited by the NYLL and the FLSA. No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee. See N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-2.14, 146-2.15, 146-2.16.

In the Complaint, Plaintiffs allege that the Defendants, including the individual Defendants who act as managers, misappropriated the Plaintiffs' tip money for themselves. Plaintiff specifically alleged Karagoz's tips were taken by the owners. ¶122. Karagoz complained about not being paid her tips. ¶123. Defendants paid other employees with the tips Plaintiff Karagoz earned. ¶125. These tips were shared with employees who did not customarily

[3] Defendants' also erroneously claim that Plaintiffs' FLSA Collective Action and NYLL Claims must be dismissed because Plaintiffs failed to establish a scheme that violates the FLSA. This is not true – Plaintiffs specifically alleged a pattern and practice of FLSA and NYLL wage violations. ¶57-67.

receive them. Plaintiff Karagoz's earned tips were shared with the other employees, including but not limited to, busboys and other waiters. ¶124. Additionally, from May 2020 to July 2020, Plaintiff Karagoz was only allowed to keep a small percentage of her tips. ¶134.

Plaintiffs have established that Defendants are liable, under the NYLL, for the misappropriation of Plaintiffs' tips. See *Gunawan*, 897 F. Supp. 2d at 89 (the plaintiff was "entitled to the reimbursement of the portion of her tips the Restaurant improperly required her to share with the chef"). As such, Defendants' motion to dismiss must be denied.

## IV. The Individual Defendants Employed the Plaintiffs and Are Personally Liable for the Wage Violations

Next, Defendants' claim that "Defendants' Richard Mandarino and John Mandarino did not employ Plaintiff." For the first time in our opposition, we agree with the Defendants. However, Richard Mandarino and John Mandarino are not named Defendants in this action. The named Defendants are Gulu, Cabuk, Yuri and Yujin.

In the Complaint, Plaintiffs specifically allege that each of the Individual Defendants served as principals, officers, owners and/or managers of the Restaurant. ¶20, 28, 36, 44. The Individual Defendants also supervised the Plaintiffs during their employment and exercised the power and authority to hire and fire, [determine] schedules, control labor relations and personnel policies, maintain employment records, and generally determine the terms and conditions of Plaintiffs' employment. ¶21, 23, 29, 31, 37, 39, 45, 47. Plaintiffs also allege in the Complaint that they could complain to any of the individual Defendants regarding any of the terms of their employment. ¶24, 32, 40, 48. Gulu specifically told Fidan, [Y]ou can find a job elsewhere, after he complained about his unpaid wages. ¶98. Gulu also ignored Fidan's request for ten days of unpaid wages. ¶100.

Courts apply an "economic realities test" to determine whether an individual qualifies as an FLSA employer. *Carter v. Duchess Cmty. Coll.*, 735 F. 2d 8, 12 (2d Cir. 1984). In *Carter*, the Second Circuit set out the following four factors to determine the "economic reality" of an employment relationship: "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 12 (citing *Bonnette v. Cal. Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)). In this case, Plaintiffs have met all four prongs of the *Carter* test, as they sufficiently alleged that the individual defendants had the power to hire and fire, supervised them, determined their rate of pay and maintained employment records. As such, Defendants' Motion to Dismiss the claims against the individual defendants must be DENIED.

**IV. <u>If Necessary, Plaintiffs Should Be Permitted Leave to Amend the Complaint</u>**

Lastly, despite Defendants' arguments to the contrary, if the Court decides to dismiss any of Plaintiffs' claims, we respectfully request they be dismissed without prejudice to allow Plaintiffs leave to amend their complaint. In denying Defendants' motion for a stay earlier in this litigation, Judge Bulsara wrote that, "The motion to dismiss, in the Court's view, will not result in a with-prejudice dismissal of the claims in the Complaint." (ECF Doc. No. 9). Furthermore, Courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). "Granting leave to amend is consistent with the liberal standard of Rule 15…, and with the Second Circuit's 'strong preference for resolving disputes on the merits.'". *Patterson v. Morgan Stanley*, 2017 Wl 11569235, at *2 (S.D.N.Y. 2017) (quoting *Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Gargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015)). Accordingly, if necessary, Plaintiffs respectfully request permission to amend the Complaint.

## CONCLUSION

For the foregoing reasons, we respectfully urge the Court to DENY Defendants' Motion to Dismiss, together with any other relief this Court deems just and proper.

Dated: December 1, 2022
New York, New York

Respectfully submitted,

**Akin Law Group PLLC**

*/s/ Robert D. Salaman*

Robert D. Salaman
45 Broadway, Suite 1420
New York, New York 10006
(212) 825-1400

*Counsel for Plaintiff*